IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:18-CR-481-3 |
| | ) | |
| CHRISTIAN STEFAN CHAVIS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

The defendant-inmate, Christian Chavis, has filed a renewed motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Mr. Chavis contends that the Court should grant his motion because his health situation over the last year substantially increased the punitive effect of his incarceration to a degree unexpected at the time of sentencing. Mr. Chavis has established extraordinary and compelling circumstances for a sentence reduction, and the § 3553(a) factors support a reduction. The Court will grant the motion and reduce his sentence by nine months. The requested reduction to time-served is not appropriate given the nature and circumstances of the offense and because the current conditions of confinement do not pose an immediate threat to his health.

**I.  Procedural History**

In May 2019, Mr. Chavis pled guilty to one count of interference with commerce by robbery. Doc. 89; Minute Entry 05/09/2019. His advisory guideline range was 70 to 87 months of imprisonment. *See* Doc. 155 at 1; Doc. 170 at 8. In August 2019, the Court

sentenced Mr. Chavis to 70 months imprisonment followed by three years of supervised release. Doc. 154; Minute Entry 08/22/2019. The Court concluded that a bottom-of-the-guidelines sentence was appropriate after weighing the aggravated nature and circumstances of the robbery against the fact that Mr. Chavis did not have a prior record and had never served a long sentence before. *See* Doc. 170 at 15–16.

One month after his sentencing, his mother passed away. Doc. 164 at ¶ 1. The Court denied his request to attend her funeral because Mr. Chavis had failed to comply with the conditions of pretrial release and because of the nature and circumstances of the robbery. *See* Minute Entry 10/02/2019.

On March 30, 2021, Mr. Chavis through counsel filed the pending motion for compassionate release and attached some 200 pages of his medical records. *See* Docs. 185–86.[1] The government has responded, and the briefing is complete. Docs. 190–92. The probation office has filed a supplemental memo containing post-sentencing information. *See* Doc. 188.

Mr. Chavis contends that the severity of his ulcerative colitis combined with his risk of contracting COVID-19 again and the conditions of confinement specific to him during the pandemic constitute extraordinary and compelling circumstances for release. *See* Doc. 185 at ¶¶ 3, 9. As to the § 3553(a) factors, Mr. Chavis contends that a reduction to time-served would result in a sentence that is sufficient but not greater than necessary in light of the "[t]he nightmare experience of being incarcerated, in jail and prison, a first

---

[1] An earlier motion, Doc. 181, was denied for insufficient evidence and failure to address the § 3553(a) factors. Doc. 182.

for him," for over two years, the death of his mother and his inability to attend her funeral, and the pain from his ongoing medical issues, particularly during an acute episode earlier this year. *Id.* at 4–5. The government identified several facts supporting compassionate release, and it offered no evidence or argument in opposition to the motion. *See generally* Doc. 190 ("The government leaves it to the Court's discretion to determine whether Chavis merits early release.").

## II. Compassionate Release

Courts do not have unfettered jurisdiction or discretion to modify criminal sentences. *See United States v. Goodwyn*, 596 F.3d 233, 235–36 (4th Cir. 2010). A court may only modify a sentence when a provision in the Federal Rules of Criminal Procedure or a statute expressly permit it to do so. *See* 18 U.S.C. § 3582(c).

Section 3582(c)(1)(A), often called the "compassionate release" provision, is one such statutory provision. For a sentence reduction under § 3582(c)(1)(A) to be appropriate, the statute requires by its terms that the movant has exhausted his administrative remedies, that extraordinary and compelling reasons exist for a sentence reduction, and that the reduction is consistent with applicable policy statements issued by the Sentencing Commission. *See United States v. McCoy*, 981 F.3d 271, 275, 283 (4th Cir. 2020). The Court must also consider the relevant § 3553(a) factors. *Id.* at 275.

The Sentencing Commission has not yet adopted a policy statement applicable to motions filed directly by defendants. The old policy statement applicable to motions brought by the BoP provides helpful but non-binding guidance as to the kinds of circumstances that might support a sentence reduction. *Id.* at 282. These include an

3

inmate's age and the length of time already served, an inmate's medical condition and access to adequate health care, whether an inmate can provide self-care within the environment of the correctional facility, or some combination of factors. U.S.S.G. § 1B1.13 cmt. 1(A)–(D).

### III. Discussion

#### A. Exhaustion

Mr. Chavis asked the warden at Petersburg Medium FCI to file a motion for sentence reduction on his behalf on January 11, 2021, more than 30 days before he filed his motion directly with the Court. *See* Doc. 185-3. The government does not contest that Mr. Chavis has exhausted his administrative remedies. Doc. 190 at 5–6. Mr. Chavis has satisfied the exhaustion requirement.

#### B. Facts

Mr. Chavis is now 24 years old. Doc. 147 at 2.[2] In 2014, well before the instant offense, he was diagnosed with Crohn's disease. *See id.* at ¶ 58. Throughout 2020, and despite treatment from BoP medical personnel, he suffered from frequent and severe episodes of abdominal pain, vomiting, diarrhea, and cramping. *See, e.g.*, Doc. 186-1 at 7, 12; Doc. 186-2 at 1, 5. At one point, non-medical guards apparently unaware of his health issues placed him in the Special Housing Unit because his symptoms made the officers suspect he was high. Doc. 186-1 at 12.

---

[2] Doc. 147 is the pre-sentence report, which the Court adopted with only one change: it reduced the enhancement for the use of a firearm from a six-level enhancement to a five-level enhancement, which lowered the total offense level from 28 to 27. *See* Doc. 155 at 1.

4

In October 2020, in response to his continuing problems and a request for more prednisone due to these symptoms, his BoP doctor referred him to a GI specialist. Doc. 186-2 at 77. For reasons not explained in the record, the BoP did not schedule this appointment quickly. Mr. Chavis did not see the specialist until January 20, 2021. Doc 186-3 at 62–63. The specialist, Dr. Rao, recommended a colonoscopy and lab work. *Id.* at 63.

Mr. Chavis began experiencing worsening symptoms shortly after his appointment with Dr. Rao. *See id.* at 32, 35. The day after the appointment, his BoP doctor prescribed Mr. Chavis anti-vomiting medication called Zofran after nurses reported that he was nauseous and had vomited several times. *Id.* at 35. On January 22, Mr. Chavis reported having 10 episodes of both vomiting and diarrhea since the previous day. *Id.* at 32. He received an injection for the vomiting. Doc. 186-3 at 33. The next day, he was observed looking weak in appearance and reported both vomiting and diarrhea; he was again prescribed Zofran. *Id.* at 28. Mr. Chavis reported the same symptoms on January 24 and was once again prescribed Zofran. *Id.* at 24.

On January 26, Mr. Chavis had a fever and was so dehydrated that BoP medical personnel could not gain intravenous access to give him IV fluids. *Id.* at 17. He was taken to the local emergency room. *Id.* Mr. Chavis was admitted to the hospital for treatment, which included IV fluids, steroids, and antibiotics. *Id.* at 15–16; *see also* Doc. 186-3 at 15 (noting that doctors also considered a blood transfusion). He received the recommended colonoscopy while he was in the hospital, which revealed that Mr. Chavis had ulcerative colitis, not Crohn's disease. *Id.* at 13; *see also* Doc. 186-4 at 13–14.

5

Mr. Chavis was discharged from the hospital on February 5, and he reported feeling much better with newly-presecribed medication, despite weighing only 120 pounds. Doc. 186-3 at 4, 62 (noting that on January 20, 2021, Mr. Chavis weighed 135 pounds). He has continued to improve following his new diagnosis and change of medication, and he has not sought medical attention for related symptoms since being discharged from the hospital. *See generally* Doc. 191.

Mr. Chavis also contracted COVID-19 in September 2020. *See* Doc. 186-1 at 5; 186-2 at 8. The risk of adverse outcomes from COVID-19 has been reported to be higher in patients with ulcerative colitis than in patients with Crohn's disease, *see* Doc. 185-2 at 1, but nothing in the submitted medical records suggests that Mr. Chavis was seriously ill because of the virus. As of the government's submission in late May, Mr. Chavis had not yet received or been offered the vaccine. Doc. 190 at 12. While the virus thus continues to pose some risk to Mr. Chavis, this risk is shrinking daily; FCI Petersburg currently reports no positive COVID-19 cases and almost 90% of inmates housed at the facility are fully vaccinated.[3]

### C. Analysis

Mr. Chavis's case presents difficult questions. Section 3582(c)(1)(A) is available, and it "represents Congress's judgment that the generic interest in finality must give way

---

[3] The BoP reports that 1,925 of 2,154 inmates housed at Petersburg FCC are vaccinated. *See COVID-19 Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited June 28, 2021); *FCI Petersburg Low*, FED. BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/pet/ (last visited June 28, 2021); *FCI Petersburg Medium*, FED. BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/pem/ (last visited June 28, 2021) (reflecting).

in certain individual cases." *McCoy*, 981 F.3d at 288 (cleaned up). But "compassionate release is a rare remedy," *Babb v. United States*, No. CR ELH-04-0190, 2021 WL 2315459, at *7 (D. Md. June 4, 2021) (cleaned up), the Court does not presently have guidance from the Sentencing Commission, as Congress intended, and the meaning of "extraordinary and compelling circumstances," is far from settled. *See United States v. Kibble*, 992 F.3d 326, 336 (4th Cir. 2021) (Quattlebaum, J., concurring).

While circumstances that "undoubtedly increase a prison sentence's punitive effect" may constitute extraordinary and compelling circumstances in some individual cases, *id.* at 336 (Gregory, J., concurring), if every defendant who experiences hardship during their incarceration is entitled to a finding of extraordinary and compelling circumstances, compassionate release would become the "exception that swallows the general rule of finality." *United States v. Hancock*, No. 1:06-CR-206-2, 2021 WL 848708, at *5 (M.D.N.C. Mar. 5, 2021). This is particularly true of inmates confined in congregate living situations during the COVID-19 pandemic.

The importance of finality and consistency in sentencing warrant caution, and given the lack of guidance, the Court could deny the motion without prejudice to a renewed motion after clarity in the law develops. *See id.* (denying motion for compassionate release without prejudice to a renewed motion when defendant-inmate, whose projected release date was July 2040, was closer to the possibility of a time-served sentence). But Mr. Chavis is scheduled to be released in less than two years, *see* Doc. 190-1 at 3 (noting projected release date of May 21, 2023), and it is not clear that the rough edges of compassionate release will be smoothed within that timeframe. And Mr.

7

Chavis's motion is based on the combination and confluence of circumstances surrounding his medical crisis during the pandemic, not on the pandemic alone.

Considering the facts here, the Court concludes that taken together Mr. Chavis has shown extraordinary and compelling circumstances under § 3582(c)(1)(A). Mr. Chavis contracted COVID-19 while incarcerated. For the last eighteen months he has coped with the hardships faced by all inmates as a result of the COVID-19 pandemic.[4] And on top of these difficulties, he has dealt with a major health crisis and delays in obtaining an accurate diagnosis.

Mr. Chavis's ulcerative colitis symptoms substantially diminished his ability "to provide self-care within the environment of a correctional facility." U.S.S.G. § 1B1.13 app. note 1(A)(ii). A lay review of his records indicates that although Mr. Chavis received regular medical care, he experienced significant problems from his ulcerative colitis for months before the BoP referred him to a GI specialist. Even after this referral, nothing happened for three months, and he only obtained the test necessary to accurately diagnose his condition after being hospitalized for an acute medical emergency. Non-medical staff once placed him in a more restrictive custody setting after misinterpreting

---

[4] The record does not contain specific evidence of the difficulties experienced by inmates at the prison where Mr. Chavis was incarcerated, but it is beyond dispute that the pandemic resulted in many institutional changes necessary to attempt to reduce transmission of the highly contagious virus. These included, for example, restrictions on inmate movement and family visits, more time in cells with limited human contact, and suspension of education and vocational training. *See, e.g.*, *Temporary Security Measures Implemented*, FED. BUREAU OF PRISONS, https://www.bop.gov/resources/news/20210116_precaution.jsp (last visited June 28, 2021) (noting restrictions on inmate movement and suspension of family visits); *BOP Modified Operations*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited June 28, 2021).

his symptoms. He lost 15 pounds within a few weeks and he was so dehydrated that doctors contemplated a blood transfusion.

To be sure, not every defendant who is hospitalized or experiences a serious health crisis unanticipated at sentencing is entitled to a finding of extraordinary and compelling circumstances, much less a finding that a sentence reduction is appropriate. But the evidence before the Court confirms that Mr. Chavis has had a uniquely difficult time during his incarceration because of his ulcerative colitis, the delay in diagnosis, and the COVID-19 pandemic. The deterrent and punitive effect of serving a sentence under these conditions is significantly increased. These circumstances, taken together, tip the scale in favor of finding extraordinary and compelling circumstances.

That is not, of course, the end of the inquiry. Whether a sentence reduction is appropriate and, if so to what extent, depends on the § 3553(a) factors.

The nature and circumstances of the offense are appalling. On December 13, 2017, Mr. Chavis and three other men broke into a residence shortly after midnight. Doc. 147 at ¶ 10. A mother and her two young children were home at the time. *Id.* at ¶ 13. One of the children witnessed the robbery and reported seeing men with guns. *Id.* After the homeowner used her cellphone to call the police, one of the men pointed a gun at her and threatened to shoot her if she did not drop the phone. *Id.* at ¶ 12. Upon arriving at the home, an officer observed four men running away from the residence. *Id.* at ¶ 10.

Mr. Chavis was arrested for his role in the robbery on December 18, 2017. *Id.* at ¶ 22. On January 17, 2019, he was released to pretrial supervision. *Id.* at 1. Mr. Chavis violated the conditions of his pretrial release by not remaining in the custody of his third-

party custodian at an approved residence and by testing positive for marijuana on three occasions. *Id.* at ¶¶ 5–6; *see also* Doc. 73.

At the time of the robbery, Mr. Chavis was 20 years old. Doc. 147 at 2. He has no other convictions. *Id.* at ¶ 47 (reflecting a criminal history score of zero). Despite not graduating from high school, Mr. Chavis has legitimate work experience, *see id.* at ¶ 67–69, and the general manager at the job he held until he self-surrendered told probation that Mr. Chavis was eligible for rehire. *Id.* at ¶ 67.

Mr. Chavis has been incarcerated since May 2019, *see id.* at 1, ¶ 9, and has served approximately 60% of his statutory sentence. *See* Doc. 190-1 at 3. Without a reduction, Mr. Chavis's projected release date is May 21, 2023. *Id.* at 2.

His record while incarcerated is less than impressive, though not entirely negative. Mr. Chavis has completed 20 hours of educational courses, enrolled in residential drug treatment, and participated in work detail. *See* Doc. 188. This would ordinarily be a minimal level of accomplishment, but the opportunities to participate in programs have been reduced during the pandemic. *See BOP Modified Operations*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited June 28, 2021) (noting modifications to "prevent congregate gathering" and that programming would be offered "to the extent practicable" and could be suspended if there were active COVID-19 cases).[5] Mr. Chavis has received three disciplinary infractions, all of which

---

[5] The Court has reviewed scores of motions for compassionate release over the last year and has become very familiar with the numbers of active cases at various BoP facilities over the course of this time. To put it mildly, and as even a cursory view of the opinions in this area

occurred between January and February 2020, for refusing to obey an order, disruptive conduct, and fighting with another person. Doc. 190-2. He had no infractions during the pandemic.

If released, he plans to live with his sister in Raleigh, North Carolina. Doc. 188 at 2. The probation office reports the residence is suitable and has not recommended any additional conditions of supervised release beyond those imposed at sentencing. *Id.*

After weighing the § 3553(a) factors in light of the extraordinary and compelling circumstances here, the Court concludes that a sentence reduction is appropriate. His incarceration has been significantly more punitive than that experienced by most inmates, even those incarcerated during the pandemic, given the length and severity of his symptoms and the medical crisis resulting from his then-undiagnosed ulcerative colitis.

But immediate release is not appropriate. His medical condition has substantially improved, and his risks from COVID-19 are low; a time-served sentence is not needed to immediately protect his health. *Cf. United States v. Beck*, 425 F. Supp. 3d 573, 574, 588 (M.D.N.C. 2019) (granting compassionate release because the BoP was failing to provide timely treatment for cancer). Although he appears to be following prison rules now, his disciplinary record is not perfect. A time-served sentence would also give insufficient weight to the shocking nature and circumstances of his criminal conduct.

The Court finds and concludes that it is appropriate to take nine months off his sentence. This reduction gives the probation office and the BoP sufficient time to plan

---

show, most institutions had many active cases during most of the time from last spring through the arrival of vaccines.

for his release and Mr. Chavis time to complete any programs available to assist him with the transition back to the community. It also takes the unusually punitive conditions of his incarceration from the fall of 2020 through the spring of 2021 into account while imposing just punishment for his very serious crimes.

It is **ORDERED** that the defendant's renewed motion for compassionate release, Doc. 185, is **GRANTED** and his sentence is reduced to 61 months.

This the 2nd day of July, 2021.

_____
UNITED STATES DISTRICT JUDGE